**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | | |
|---|---|---|
| **MARK ANTOINE JONES,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Civil Action No.: 4:18-CV-1154-RDP** |
| | } | |
| **NANCY A. BERRYHILL,** | } | |
| **Acting Commissioner of** | } | |
| **Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM DECISION**

Plaintiff Mark Antoine Jones ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), seeking review of the decision of the Commissioner of Social Security ("the Commissioner") denying his claim for a period of disability insurance benefits ("DIB") and supplemental security income ("SSI"). *See* 42 U.S.C. § 405(g). Based on this court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed his application for DIB and SSI on July 14, 2015, alleging a disability onset date of November 22, 2013. (R. 170-1). The Social Security Administration ("SSA") denied the initial request for DIB on August 19, 2015. (R. 179). Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (R. 229), and ALJ David L. Horton held the hearing on July 26, 2017. (R. 123). In his decision dated October 16, 2017, the ALJ determined that Plaintiff was not under a disability within the meaning of Sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act. (R. 76). Because the Appeals Council denied Plaintiff's request for

review on July 16, 2018, which was the final decision of the Commissioner (R. 1-4), the Commissioner's decision is now a proper subject for this court's appellate review.

## II.    Statement of Facts

Plaintiff, who was born on February 5, 1973, was 42-years-old when he filed his request for DIB/SSI and 44 at the time of the ALJ's decision.[1] (R. 76, 171). Plaintiff completed the tenth grade and held two relevant jobs over fifteen years: poultry dressing worker and material handler. (R. 141). The ALJ found that Plaintiff suffers from borderline intellectual functioning, depression, degenerative disc disorder, and obesity. (R. 68).

While Plaintiff has an extensive and diverse medical record that goes back to March 1998 (R. 765), the relevant facts relate to Plaintiff's history of intellectual disorders, which implicates Listing 12.05.[2] Plaintiff visited Dr. Storjohann for psychological testing on July 29, 2013, after a reference from his attorney. (R. 1281). Dr. Storjohann administered a Wechsler Adult Intelligence Scale-Fourth Edition exam (WAIS-IV) and a Wide Range Achievement Test: Fourth Edition exam (WRAT4). The WAIS-IV results indicated that Plaintiff has a full-scale IQ of 76, verbal comprehension skills at the first percentile, perceptual reasoning skills at the twenty-fifth percentile, working memory at the ninth percentile, and processing speed at the twenty-third percentile. (R. 1281). The WRAT4 exam resulted in an overall ability in the borderline range, and it detailed that Plaintiff is in the extremely low range for verbal comprehension skills, average range for perceptual reasoning skills, and the low average range for working memory and processing speed. (R. 1281-2).

---

[1] Previously, Plaintiff unsuccessfully filed and lost a previous suit for DIB; in that case, an ALJ ruled against him on November 21, 2013. (R. 204).

[2] The record indicates that the Plaintiff visited a medical professional at least once for each of the other alleged impairments: right knee pain, left shoulder pain, headaches, anxiety, and recurrent chest wall pain due to chondrocostal junction syndrome. (Pl.'s Mem. 23). However, the court does not detail these occurrences since they are not relevant to its analysis.

Plaintiff first visited Cherokee Etowah DeKalb Mental Health Center ("CED") on November 12, 2015, to seek treatment for depression and anxiety. (R. 764). Subsequently, Plaintiff returned to CED eight times for treatment from a licensed therapist until (March 28, 2017). (R. 746-8, 1293-9).[3] Over time, Plaintiff made minimal progress in coping with his depression. (R. 746, 1293, 1297-8). And, the therapist indicated after each visit that Plaintiff was oriented to person, place, time, and situation. (R. 746-8, 1293-9).[4] Also, there is no evidence that Plaintiff met with Dr. Feist until his final visit to CED in March 2017; instead, various therapists signed the remaining medical records from CED. (R.1299). Plaintiff now claims that Dr. Feist was his treating psychiatrist. (Pl.'s Mem. 20).

The final page of the record is a portion of a yes/no questionnaire (the single-page exhibit begins with question 13), which the ALJ determined bears an illegible signature. (R. 74, 1359). The signee answered that Plaintiff can understand or carryout very short and simple instructions, interact with supervisors and co-workers, and maintain socially appropriate behavior. (R. 1359). The signee also indicated that Plaintiff cannot maintain attention for at least two hours, perform activities within a schedule and be punctual, sustain an ordinary routine without special supervision, nor adjust to routine and infrequent work changes; however, the partial form is not accompanied by any explanation or evidence. (R. 1359).

III.    **ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R.

---

[3] Plaintiff's medical records from Quality of Life Health Services, Inc. indicate two visits where the chief complaint included depression or the doctor tested for depression; however, the physician did not include an assessment or treatment plan for depression on either occasion. (R. 886, 971).

[4] This indication is consistent with the voluminous medical record from Quality of Life Health Services, Inc. (R. 765-1203).

§ 404.1520(a)(4)(i). "Substantial work activity" involves significant physical or mental activities, and "gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572. If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. When the claimant meets these criteria, the ALJ will find that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still hold that the claimant is disabled after the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). Then, in the fourth step, the ALJ evaluates whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ finds that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* On the other hand, if the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the final step. 20 C.F.R. § 404.1520(a)(4)(v).

In the last portion of the test, the ALJ must decide whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. §

404.1520(g). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In this case, the ALJ first determined that Plaintiff has met the insured status requirements of the Act through December 31, 2013. (R. 68). Next, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 22, 2013, the alleged onset date of disability.[5] (R. 68). The ALJ also determined that Plaintiff has the following medically determinable severe impairments: borderline intellectual functioning, depression, degenerative disc disorder, and obesity. (R. 68). However, the ALJ reasoned that the record does not demonstrate that Plaintiff has an impairment or combination of impairments that meet or medically equal the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. (R. 69).

After considering whether Plaintiff's symptoms were reasonably consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR 404.1529 and SSR 16-3p, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light unskilled work subject to additional limitations. (R. 71). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements and other allegations concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 72).

At the final step, the ALJ found that Plaintiff is not capable of performing past relevant work. When considering Plaintiff's age, limited education, work experience, and RFC, in addition

---

[5] To establish entitlement to DIB under Title II of the Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423(a)(1)(A). However, there is no such requirement for SSI. *Stone v. Comm'r of Soc. Sec.*, 596 F. App'x 878, 879 (11th Cir. 2015).

to the Vocational Expert's testimony, however, the ALJ determined that there are existing jobs in significant numbers in the national economy that Plaintiff can perform. (R. 75-6). Having found that Plaintiff has limitations that do not rise to the level of a disability and that he is capable of making a successful adjustment to other work available in significant numbers in the national economy, the ALJ held that Plaintiff has not been under a disability, as defined by the Act, from the alleged onset date of disability to the date of decision. (R. 69, 76).

## IV.    Plaintiff's Argument for Remand or Reversal

Plaintiff argues that the ALJ's factual findings are not supported by substantial evidence or the application of correct legal standards because: (1) the ALJ erred in his application of Listing 12.05 or an equivalent; (2) the ALJ failed to accord proper weight to the treating physician's opinion in the context of the RFC; and, (3) the ALJ failed to consider all the claimant's severe impairments. (Pl.'s Mem. 1). The court addresses each argument, in turn.

## V.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In other words, the district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; more precisely, "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *Id.* While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI.    Discussion

A claimant "bears the burden of proving that he is disabled, and consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a)). Upon review of the record as a whole, the court concludes that Plaintiff has not met this burden; thus, the court holds that the Commissioner's decision is supported by substantial evidence and is in accordance with applicable law.

### A.    Substantial Evidence Supports the ALJ's Decision Not to Apply Listing 12.05 or an Equivalent.

At step three of the sequential evaluation process, the ALJ must determine whether a claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments describes ailments that are considered severe enough to prevent a person from completing "any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). If a claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1520(a)(4)(iii), (d). But, a claimant bears the burden of proving

that his impairments meet or equal one included in the Listing. *See Kalishek v. Commissioner*, 470 F. App'x. 868, 870 (11th Cir. 2012); *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

To prove a listed impairment or equivalent combination, Plaintiff must (1) establish that he has a diagnosed condition that is included in the Listing and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable Listing and duration requirement. *See* 20 C.F.R. § 404.1525(a)-(d); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Additionally, to show that a combination of impairments equals an enumerated impairment, the medical findings must be "at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1525(a)-(d); *see Wilson*, 284 F.3d at 1224; *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (holding that an impairment manifesting only some of [a Listing's] criteria, no matter how severely, does not qualify).

In this case, Plaintiff specifically alleges that the medical evidence shows that he meets Listing 12.05 or an equivalent. (Pl.'s Mem. 9). A claimant can meet Listing 12.05 (Intellectual Disorder) by two avenues. Plaintiff can prove all three factors of paragraph A, which states:

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and
3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22,

Alternatively, a claimant can, consistent with paragraph B, prove that he has:

1. Significantly subaverage general intellectual functioning evidenced by a or b:
    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
    b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
   a. Understand, remember, or apply information (see 12.00E1); or
   b. Interact with others (see 12.00E2); or
   c. Concentrate, persist, or maintain pace (see 12.00E3); or
   d. Adapt or manage oneself (see 12.00E4); and
3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § Pt. 404, Sub. P, App. 1. Here, the record evidence confirms the ALJ's finding that Plaintiff does not satisfy either paragraph. Since Plaintiff successfully participated in Dr. Storjahann's WAIS-IV test, which is a standardized test of intellectual functioning, with no indication of limitations, he fails to satisfy the first factor of paragraph A.[6] Furthermore, Plaintiff scored a 76 on the full-scale IQ exam; therefore, he fails to satisfy the first factor of paragraph B.[7] As a result, there is substantial evidence in the record to support the ALJ's decision not to apply Listing 12.05 or an equivalent.

**B. The ALJ Properly Afforded Little Weight to Dr. Feist's Opinion Dated August 2, 2017.**

The weight the ALJ gives to a medical source's opinion depends on three factors: (1) the medical source's relationship with the claimant, (2) the evidence the medical source presents to support his opinion, and (3) the degree of consistency between the medical source's opinion and the medical evidence in the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c)(2). By definition, a treating physician is a claimant's "own physician…who has provided [claimant] with

---

[6] The Eleventh Circuit has not interpreted Listing 12.05 since the 2017 amendment; however, the plain language of the Listing and other district courts agree with this interpretation. *See Cole v. Berryhill*, No. CV 18-3-HRW, 2019 WL 1179389, at *3 (E.D. Ky. Mar. 13, 2019); *Poyle v. Comm'r of Soc. Sec.*, No. CV 17-14000, 2018 WL 5649925, at *5 (E.D. Mich. Oct. 3, 2018); *Dettmer v. Berryhill*, No. CV 17-2296-JWL, 2018 WL 3304521, at *5 (D. Kan. July 5, 2018).

[7] The court need not address Plaintiff's adaptive functioning or whether evidence supporting the intellectual disability began prior to age 22 is needed because Plaintiff must prove all three factors of either paragraph in the conjunctive.

medical treatment or evaluation and who has…an ongoing relationship with [claimant]." *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 n.3 (11th Cir. 2006) (quoting 20 C.F.R. § 404.1502). Furthermore, the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003). Good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* at 1241. Moreover, the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician. *Id.*

In this case, the ALJ afforded little weight "to the medical source statement presented in Exhibit 22F as it is not supported by the medical evidence of record and contains an unknown signature." (R. 74).[8] Also, the ALJ noted that Exhibits 21F and 22F seemed to be completed in the same handwriting, yet they were signed by different people. (R. 74). Thus, the ALJ articulated three reasons explaining why he afforded little weight to the opinion in Exhibit 22F.[9]

Putting aside the issue of the signature, there is substantial evidence in the record to support the ALJ's decision to afford little weight to Exhibit 22F because the information in that document is not supported by medical evidence in the record. The partial questionnaire, which is not accompanied by any exam results, explanation, or medical evidence, merely contains conclusory responses. Those responses are not bolstered by the record, and certainly not supported by CED's

---

[8] Both the Plaintiff's and Government's brief assume (without supporting evidence) that Exhibit 22F is the opinion of Dr. Feist. (Pl.'s Mem. 20; Gov.'s Mem. 11-12). The court's analysis does not depend upon whether that is indeed Dr. Feist's signature.

[9] Also, the record does not sufficiently demonstrate that Dr. Feist is Plaintiff's treating physician. Even though there is an ongoing history of Plaintiff attending therapy sessions at CED, there is only one example of Dr. Feist consulting with the Plaintiff. *See, e.g., Denomme v. Comm'r Soc. Sec.*, 518 F. App'x 875, 877 (11th Cir. 2013) (holding that the ALJ does not have to defer to the opinion of a physician who conducted a single examination); *Hernandez v. Comm'r Soc. Sec.*, 761 F. App'x 901, 903 (11th Cir. 2019) (holding that the ALJ does not have to give weight to the opinion of a one-time examiner). (R. 1293).

medical records. As a result, even if the signee of Exhibit 22F was Plaintiff's treating physician, the ALJ had good cause to decline to give considerable weight to the document. *See Phillips*, 357 F.3d at 1241 (holding that an ALJ has good cause to deny considerable weight to conclusory findings of a treating physician); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (reasoning that an ALJ has good cause to deny considerable weight to a treating physician's opinion that is not bolstered by the medical record). Thus, the ALJ properly afforded little weight to the medical source statement in Exhibit 22F.

**C.  The ALJ Properly Evaluated Plaintiff's Impairments Throughout the Evaluation.**

When an ALJ recognizes at least one severe impairment and proceeds to Step Three of the sequential evaluation process, the ALJ is not obligated to identify additional impairments if the decision demonstrates that the ALJ properly considered all impairments at subsequent steps. *See Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x. 949, 951 (11th Cir. 2014) (reasoning that the ALJ's recitation that he has evaluated "an impairment or combination of impairments" or considered "all symptoms" is sufficient to demonstrate that the ALJ considered all necessary evidence subsequent to Step Two); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (reasoning that an ALJ commits non-reversible error when he misclassifies a severe impairment at step two, as long as the ALJ finds at least one severe impairment and considers all impairments in combination at later steps in the evaluation); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (holding that nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe; rather the ALJ is required to demonstrate that he has considered all of the claimant's impairments, whether severe or not, in combination at step three); *Jackson o/b/o Z.J. v. Comm'r, Soc. Sec.*, No. 4:17-CV-00733-ACA, 2018 WL 6326480, at *4 (N.D. Ala. Dec. 4, 2018).

In this case, the ALJ stated, at Step Three, "[t]he evidence of the record does not contain any diagnostic findings, signs, symptoms, or laboratory results that meet or equal any of the listed impairments," in addition to, "there are no opinions in the record from medical experts…who have been designated by the Commissioner, which indicate that the claimant's impairments, alone or in combination, meet or equal a listing." (R. 69). Also, when determining Plaintiff's residual functional capacity, the ALJ stated that he "considered all symptoms," as well as, Plaintiff's "severe and non-severe impairments." (R. 71, 74). Therefore, throughout the analysis, the record supports the conclusion that the ALJ properly evaluated Plaintiff's impairments, both severe and non-severe, consistent with the Eleventh's Circuit precedent.

## VII.   Conclusion

The court concludes that the ALJ's determination that the Plaintiff is not disabled is supported by substantial evidence and the ALJ applied the proper legal standards in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum decision will be entered.

**DONE** and **ORDERED** this July 30, 2019.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE